# SEITZ *v.* BREWERS' REFRIGERATING MACHINE COMPANY.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF NEW YORK.

No. 61.   Argued October 29, 1891.— Decided November 9, 1891.

When a contract is couched in terms which import a complete legal obligation, with no uncertainty as to the object, or extent of the engagement, it is, (in the absence of fraud, accident or mistake,) conclusively to be presumed that the whole engagement of the parties and the extent and manner of their undertaking were reduced to writing.

Whether the written contract in this case fully expressed the terms of the agreement between the parties was a question for the court; and silence on a point that might have been embodied in it does not open the door to parol evidence in that regard.

When a known, described and definite article is ordered of a manufacturer, although it be stated by the purchaser to be required for a particular purpose, yet, if the known, described and definite thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer.

THE case was stated by the court as follows :

This was an action brought by the Brewers' Refrigerating Machine Company against Michael Seitz upon the following contract :

. "This agreement, made this 11th day of January, A.D. 1879, between the Brewers' Refrigerating Machine Company of Alexandria, Va., party of the first part, and Michael Seitz, of Brooklyn, N. Y., party of the second part, witnesseth :

"That the party of the first part hereby agrees and contracts to supply the party of the second part with a No. 2 size refrigerating machine, as constructed by the said party of the first part, by the 15th day of March next, or as soon thereafter as possible, the machine to be delivered at the depot or wharf in Philadelphia, Penn., and to be put up and put in operation in the brewery of the said party of the second part at 258–264 Maujer street, at Brooklyn, E. D., N. Y., under the superinten-

dence of a competent man furnished by the said party of the first part.

" The party of the second part hereby agrees and contracts to pay to the said party of the first part for said machine the sum of nine thousand four hundred and fifty dollars ($9450.00) in manner as follows, namely : Four thousand seven hundred and twenty-five dollars ($4725.00) on the day when the machine is put in operation at the brewery of the said party of the second part, and the balance of four thousand seven hundred and twenty-five dollars ($4725) in three equal instalments — that is to say, one thousand five hundred and seventy-five dollars ($1575.00) for each instalment, payable respectively in one (1), two (2) and three (3) months after the day when the machine is put in operation at the brewery of the said party of the second part, for which instalments the said party of the second part agrees and contracts to give his notes on the day last mentioned."

The complaint, after setting forth the execution of the contract on the 11th of January, A.D. 1879, alleged compliance therewith in every respect by the plaintiff, and breach of the promise to pay the purchase price.

The defendant stated in his answer, among other things, " that the machine placed in defendant's brewery was worthless and incapable of operating to produce the results represented by plaintiff to this defendant as an inducement to enter into the aforesaid agreement ; that said machine has not been accepted by this defendant nor operated or attempted to be operated by defendant, his agents, employés' nor any other person acting by or under his authority, and did not pass out of the control of the plaintiff, nor has the said machine been used by him in his said brewery, because said machine was worthless and incapable of serving any useful purpose therein." And defendant also averred, by way of counter-claim, that he had sustained damages by reason of false and fraudulent representations by plaintiff as to what the machine would accomplish, in reliance upon which he had permitted his brewery to be subjected to the action of said machine, and suffered loss accordingly.

Upon the trial before the circuit judge and a jury, plaintiff proved that a No. 2 size refrigerating machine, as constructed by the Brewers' Refrigerating Machine Company, was supplied defendant and put up and put in operation in his brewery, by it, in accordance with the terms of the contract.

Defendant thereupon asked to amend his answer, "to set up that defendant entered into that contract by reason of fraudulent representations on the part of this company." The amendment was allowed, and was in substance that plaintiff represented that the machine was capable of cooling certain rooms in the brewery which had been examined by plaintiff, but the machine, when set up and operated, was not so capable, and failed to perform the work for which, upon the representations of the plaintiff, the machine had been contracted for by defendant; that defendant contracted to purchase the machine upon the guarantee by plaintiff to defendant that it would cool certain rooms, and it was upon that guarantee alone that defendant entered into the contract; that defendant entered into the contract upon the representations of the plaintiff to the effect that the No. 2 machine referred to in the contract set forth in the complaint would cool and was capable of cooling a space of 150,000 cubic feet of air continuously to a temperature sufficiently low for the purpose of brewing or manufacturing beer in the defendant's brewery or premises, that is to say, to a temperature in the neighborhood of 40° Fahrenheit; and that the plaintiff knew at and before the time when the contract was made that the representations made to the defendant were false and unfounded, and knew that the said No. 2 machine was not capable of performing the work which plaintiff represented it as being capable of performing, and knew that the machine would be worthless to the defendant for the purposes for which defendant contracted for it and intended to use it.

Evidence on defendant's behalf was then admitted tending to show that prior to the execution of the contract, plaintiff's agents had represented that the machine would cool 150,000 cubic feet to 40° Fahrenheit; that defendant had been cooling his brewery with ice and wished the machine to cool the

rooms to about the same extent; and that the machine did not cool the rooms as desired.   On cross-examination of the defendant's agent, it appeared that on January 13, 1879, he wrote to the secretary of the refrigerating company : " In speaking to Mr. M. Seitz to-day he said that your agreement was very unsatisfactory to him; in fact, that before he would get the machine that he wanted a written guarantee from you that you would cool his building, 'which you have seen, to 3½ R. and keep it at that all the time ; otherwise he would not have the machine, as he would have no use for it, as he would have to put himself to great expense and great risk at the same time."   To which plaintiff responded, January 20: " I regret to hear that Mr. Seitz feels dissatisfaction with the contract made with him.   The guarantee he now asks for in addition it would not be proper for us to give, as Mr. Seitz himself will see on further reflection, we think.   The maintenance of a certain temperature in his rooms is not solely dependent upon our machines; in fact, there are a great many other things entirely beyond the control of the machine which influence this temperature.   The mode of working the rooms, the water used for washing, the fermentation, and many other things might be mentioned in this connection as matters which we cannot control, and which nevertheless are most important considerations in the maintenance of a given temperature.   We are confident from the experience with the Portner machine during last summer and fall that the machine sold to Mr. Seitz will not only give him the desired low temperature, but will, in addition, give him what he never before had in the warmer months, namely, pure and dry air.   The machine we are building for him is in many respects far superior (aside from size) to the Portner machine, and when he has had it a year we believe he would not part with it for any money if he could not replace it.   That we must decline to guarantee what Mr. Seitz asks for is simply for the reasons stated.   There are too many side considerations entirely beyond the control of the machines.   We would add that we have not in any instance been asked for such a guarantee as a condition of sale, but that all the parties to whom we have

sold bought on our representations and what they have seen and heard of the working of the Portner machine."

On January 21, 1879, defendant's agent telegraphed plaintiff: "Will you defend any infringement suits against Mr. Seitz for using your machine?" and on January 23, 1879, wrote: "The machine sold to Mr. M. Seitz is all right, and can be sent at any time that it is ready." On the 16th of March, he again wrote plaintiff: "Mr. Seitz would like to have you to commence at once putting up his machine."

The defendant having rested, the court, on motion, directed a verdict for the plaintiff for the amount claimed.

The circuit judge remarked to the jury that the only defence worthy of consideration was that the machine was sold to the defendant under fraudulent representations by the plaintiff's agents, but that there was no evidence of fraud whatever in the case; that there was evidence to show that the machine did not work satisfactorily, and the jury were doubtless authorized to infer that it did not have the capacity of cooling 150,-000 cubic feet to the degree stated, but that there was a written contract in the case, which contained no warranty, and, consequently, if the machine did not fulfil the expectations of the defendant, or if it did not fulfil verbal representation made at the time the contract was entered into, nevertheless defendant had no defence; that there was no evidence that false or fraudulent representations had been made; that the machine had been built and put up pursuant to the written contract; and that the defendant could not be permitted, upon the general theory that the machine was not a satisfactory article, to defeat the plaintiff from recovery.

The verdict having been rendered as directed, and judgment entered thereon, the cause was brought here on writ of error.

*Mr. Esek Cowen* for plaintiff in error.

I. The defence, set up in the amended answer, contained no element of fraud, but was a sufficiently well expressed pleading, setting up a contract of warranty, or guaranty, *collateral to the contract of purchase and sale.*

II. The learned judge was entirely mistaken, in his supposition that the written contract precluded the proof of a parol guaranty, collateral to the main contract of purchase and sale, and not in any way contradicting or modifying it.

The contract of purchase and sale was simply a contract to sell and deliver on one part, and to purchase on the other part, a machine of the general description, which the plaintiffs were then constructing, and known as size No. 2. The sole effect of the contract was to bind one party to deliver such a machine, and to bind the other party to pay for it. It had no other legal effect whatever, and a contract that the machine *after it was delivered*, should do certain work, and be capable of a certain operation, and should produce a certain effect, in no way contradicted, modified or added to the original contract. It was purely collateral, and as such could be proved by parol. This is the law in England. It is the law of the State of New York, where this cause of action arose, and where this case was brought and tried.

It is only necessary upon this point to cite a few of the cases in which this question has been considered, and more especially, as at least two of the cases cited from the New York Court of Appeals contain a very elaborate examination of the question. *Batterman* v. *Pierce*, 3 Hill, 171; *Johnson* v. *Oppenheim*, 55 N. Y. 280, 293; *Chapin* v. *Dobson*, 78 N. Y. 74.

III. Aside from the express parol warranty or guaranty, there was clearly an implied warranty, arising from the very nature of the transaction, that this machine should be *reasonably fit to accomplish the purpose for which it was sold*.

There is no doubt of the general rule that when a manufacturer enters into an *executory* contract to manufacture and furnish a certain article to a purchaser, and fully knows the purpose for which the article is intended, that there arises an implied warranty that the article shall be reasonably fit for the purpose for which the buyer intends to use it, and that it shall, to a reasonable degree at least, accomplish the purpose for which it was bought. There is some difference apparently, in the decisions of the courts, with regard to the question of

how far this principle applies to an *executed* sale, but that it applies to an *executory* sale, where the manufacturer is to make and deliver the article at a future time, there can be no possible doubt. It is the rule in England, and so far as I know in all the States, and beyond all question it is the rule in the State of New York. Benjamin on Sales, § 988, and note; *Brown* v. *Edgington*, 2 Man. & Gr. 279; *Jones* v. *Bright*, 5 Bing. 533; *Van Wyck* v. *Allen*, 69 N. Y. 61; *Gautier* v. *Douglass Mfg. Co.*, 13 Hun, 514; *Hoe* v. *Sanborn*, 21 N. Y. 552; *S. C.* 78 Am. Dec. 163; *Gaylord Mfg. Co.* v. *Allen*, 53 N. Y. 515.

*Mr. John H. V. Arnold* for defendant in error.

Mr. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

If the defence were solely that the defendant was induced by false and fraudulent representations to enter into the contract in question, it is conceded that the Circuit Court did not err in directing a verdict for the plaintiff, as there was no evidence of fraud in the case. It is earnestly contended, however, that under the answer as amended, the defendant was entitled to avail himself of the breach of an alleged contract of warranty or guaranty collateral to the contract of purchase and sale; or of an implied warranty that the machine should be reasonably fit to accomplish a certain result. Assuming the sufficiency of the pleadings to enable the questions indicated to be raised, we are nevertheless of opinion that the direction of the Circuit Court was correct.

The position of plaintiff in error is, in the first place, that the evidence on his behalf tended to show an agreement between himself and defendant in error, entered into prior to or contemporaneously with the written contract, independent of the latter and collateral to it, that the machine purchased should have a certain capacity and should be capable of doing certain work; that the machine failed to come up to the requirements of such independent parol contract; that this evidence was competent; and that the case should therefore have been left to the jury.

Undoubtedly the existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms, may be proven by parol, if under the circumstances of the particular case it may properly be inferred that the parties did not intend the written paper to be a complete and final statement of the whole of the transaction between them. But such an agreement must not only be collateral, but must relate to a subject distinct from that to which the written contract applies; that is, it must not be so closely connected with the principal transaction as to form part and parcel of it. And when the writing itself upon its face is couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing. Greenl. Ev. § 275.

There is no pretence here of any fraud, accident or mistake. The written contract was in all respects unambiguous and definite. The machine which the company sold and which Seitz bought was a No. 2 size refrigerating machine as constructed by the company, and such was the machine which was delivered, put up and operated in the brewery. A warranty or guaranty that that machine should reduce the temperature of the brewery to 40° Fahrenheit, while in itself collateral to the sale, which would be complete without it, would be part of the description and essential to the identity of the thing sold; and to admit proof of such an engagement by parol would be to add another term to the written contract, contrary to the settled and salutary rule upon that subject.

Whether the written contract fully expressed the terms of the agreement was a question for the court, and since it was in this instance complete and perfect on its face, without ambiguity, and embracing the whole subject-matter, it obviously could not be determined to be less comprehensive than it was. And this conclusion is unaffected by the fact that it did not allude to the capacity of the particular machine. To hold that mere silence opened the door to parol evidence in that regard would be to beg the whole question.

We are clear that evidence tending to show the alleged independent collateral contract was inadmissible. *Martin* v. *Cole*, 104 U. S. 30; *Gilbert* v. *Moline Plough Co.*, 119 U. S. 491; *The Delaware*, 14 Wall. 579; *Naumberg* v. *Young*, 44 N. J. Law (15 Vroom) 331; *Conant* v. *National State Bank*, 121 Indiana, 323; *Mast* v. *Pearce*, 58 Iowa, 579; *Thompson* v. *Libby*, 34 Minnesota, 374; *Wilson* v. *Deen*, 74 N. Y. 531; *Robinson* v. *McNeill*, 51 Illinois, 225.

Failing in respect of the alleged express warranty, plaintiff in error contends, secondly, that there was an implied warranty, arising from the nature of the transaction, that the machine should be reasonably fit to accomplish certain results, to effect which he insists the purchase was made. It is argued that the evidence tended to establish that the plaintiff knew that the defendant had been cooling his brewery with ice, and that the object of obtaining the machine was to render unnecessary the expense of purchasing ice for that purpose; and that unless the machine would cool it to the same extent, or about the same, as the ice did, it would be worthless, so far as he was concerned. It is not denied that the machine was constructed for refrigerating purposes, and that it worked and operated as a refrigerating machine should; but it is said that it did not so refrigerate as to reduce the temperature of the brewery to 40° Fahrenheit, or to a temperature which would enable defendant to dispense with the purchase of ice.

The rule invoked is, that where a manufacturer contracts to supply an article which he manufactures, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment of the manufacturer, the law implies a promise or undertaking on his part that the article so manufactured and sold by him for a specific purpose, and to be used in a particular way, is reasonably fit and proper for the purpose for which he professes to make it, and for which it is known to be required; but it is also the rule, as expressed in the textbooks and sustained by authority, that where a known, described and definite article is ordered of a manufacturer, although it is stated by the purchaser to be required for a particular purpose, still, if the known, described and definite

thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer. Benjamin on Sales, § 657; Addison on Contracts, Book II, c. vii, p. *977; *Chanter* v. *Hopkins*, 4 M. & W. 399; *Ollivant* v. *Bayley*, 5 Q. B. 288; *Dist. of Columbia* v. *Clephane*, 110 U. S. 212; *Kellogg Bridge Company* v. *Hamilton*, 110 U. S. 108; *Hoe* v. *Sanborn*, 21 N. Y. 552; *Deming* v. *Foster*, 42 N. H. 165.

In the case at bar the machine purchased was specifically designated in the contract, and the machine so designated was delivered, put up and put in operation in the brewery. The only implication in regard to it was that it would perform the work the described machine was made to do, and it is not contended that there was any failure in such performance.

This is not the case of an alleged defect in the process of manufacture known to the vendor but not to the purchaser, nor of presumptive and justifiable reliance by the buyer on the judgment of the vendor rather than his own, but of a purchase of a specific article, manufactured for a particular use, and fit, proper and efficacious for that use, but in respect to the operation of which, in producing a desired result under particular circumstances, the buyer found himself disappointed.

In short, there was no express warranty that the machine would cool 150,000 cubic feet of atmosphere to 40° Fahrenheit, or any other temperature, without reference to the construction of the particular brewery or other surrounding circumstances, and, if there were no actual warranty, none could be imputed.

We may add, that in the light of all the evidence in the record, treated as competent, we think no verdict could be permitted to stand, which proceeded upon the ground of the existence of such a warranty as is contended for. The alleged antecedent representations as to whether the machine possessed sufficient refrigerating power to cool this brewery, were no more than expressions of opinion, confessedly honestly entertained, and dependent upon other elements than the machine itself, concerning which plaintiff in error could form an opinion as well as defendant; and the conduct of plaintiff

in error in demanding, two days after the contract was executed, a written guaranty that the machine company would cool his building to 3½° Reaumur (or 40° Fahrenheit), and keep it at that all the time, and in acquiescing in the company's refusal to give the guaranty for reasons stated, and in thereupon afterwards ordering the company to go on with the work, as exhibited in the correspondence between the parties, seems to us to justify no other conclusion than that reached by the verdict.

The judgment of the Circuit Court is          *Affirmed.*

MR. JUSTICE BRADLEY and MR. JUSTICE GRAY were not present at the argument and took no part in the decision of this case.