PROVIDENCE MACH. CO. v. LAURENS COTTON MILLS.

(Circuit Court, D. South Carolina. December 8, 1899.)

SALE—ACTION TO RECOVER PRICE—COUNTERCLAIM.

In an action to recover the price of machinery for a cotton mill, under a written contract, an answer which admits the furnishing of the machinery, and does not deny that it conformed to the specifications of the written contract, but alleges that it was not fit, proper, and efficacious for the designed use, which fact was recognized by the plaintiff, who took measures to remedy the defects, and finally succeeded, and sets up a counterclaim for damages sustained by defendant by reason of such defects, presents an issue of fact as to the scope and meaning of the contract, outside of its written terms, to be determined by parol evidence, and which should be passed on by the jury.

At Law. On motion to set aside a verdict, and to reverse orders sustaining a demurrer to the answer and refusing leave to amend.

Bryan & Bryan, for plaintiff.
Ansel, Cothran & Cothran, for defendant.

SIMONTON, Circuit Judge. At the trial of this case, when the pleadings were read, the plaintiff interposed an oral demurrer to the answer and defense by way of counterclaim, in that it did not state facts sufficient to constitute a defense or counterclaim to the matters complained of in the complaint. The plaintiff is engaged in the manufacture of machinery claimed to be suitable for the manufacturing of cotton goods. On 30th June, 1896, it proposed to the defendant, who is engaged in the manufacture of cotton goods, to furnish it machinery for this purpose, to wit, 4 slubber fly frames, 6 intermediate fly frames, and 20 fine fly frames, at certain fixed prices, which prices included the services of a competent man to set up the machinery. The terms of payment are stated, as well as the time for delivery of the machinery. That portion of the contract relating to the fly frames is as follows:

"20 fine fly frames, 152 spindles each; 5¼" space; 7" traverse; 7x5½" bobbin crucile steel rolls; shell top rolls for front line; Dixon patent saddle; front roll bearings, brass bushed; improved bolster rail; 16" driving pulleys. Price per spindle, $6.16."

The machinery was delivered, the cash portion of the purchase money paid, and notes given as provided. Certain articles outside of the contract were provided, and not closed by note. No further payments having been made, the plaintiff sues on the note and open account.

The answer admits the execution of the notes and the incurring of the open account, denies that anything is due, and then sets up a counterclaim. This rests on the allegation of defects in machinery furnished and the results from the use thereof. The portion of the answer stating the defects is in these words:

"That on or about December 3, 1896, the plaintiff delivered to the defendant, in pretended compliance with said contract, the number of fly frames stipulated for, but that, instead of equipping them with a standard flyer, the plaintiff furnished a flyer of its own manufacture, which was defective, and wholly unsuitable for the purpose designated by defendant, of which the plaintiff was fully cognizant."

The bill of particulars with the counterclaim is for increased cost of manufacture; loss of profits or diminished products; running extra time for six months, and for coal, oil, and supplies for the same period; increase of waste; and claims for defective goods. The plaintiff having demurred to the counterclaim, argument was heard, and demurrer sustained. The defendant asked leave to amend, and submitted draft of amendment. This was refused, and a verdict for plaintiff on its notes and account. This is a motion to set aside the verdict, to reverse the order refusing amendment, and to also reverse the order sustaining the demurrer.

The motion depends upon the question of error in sustaining the demurrer. The machinery contracted for was delivered. The objection is that this machinery was defective, in that, instead of equipping the fly frames with a standard flyer, the plaintiff furnished a flyer of its own manufacture, which was defective, and wholly unsuitable for the purpose designated by defendant. Four defects are stated: (a) That it was not the Boddin flyer, which is standard, and of English make. (b) The pressure bar is too heavy, and causes the flyer to work too lightly against the bobbin. (c) The finger is too heavy, causing additional friction. (d) The flyer makes uneven and weak roving, and requires the roving frames to be doffed when about two-thirds full, and also causes tangled work, of which plaintiff was fully cognizant. The contract was to furnish to the defendant, who was engaged in the manufacture of cotton goods, machinery suitable for that purpose. "The machinery purchased was specifically designated in the contract. The machinery so designated was delivered, put up, and put in operation." The only implication in regard to it was that it would perform the work the described machine was made to do. Seitz v. Machine Co., 141 U. S. 519, 12 Sup. Ct. 46, 35 L. Ed. 837.

Leaving out of consideration the omission to use the Boddin flyer, no mention of which is made in the contract, the defendant alleges three particulars in which the machinery failed to perform its work. The contention is that the bare description of the 20 fine fly frames indicated, to any expert in the business,—to any one engaged in the manufacture of machinery for cotton mills,—the kind of machinery intended by both purchaser and vendor, and that the machines furnished were defective in the particulars mentioned. The language of the answer is somewhat misleading. It alleges the delivery of the number of fly frames stipulated for, but that, instead of equipping them with a standard flyer, the plaintiff furnished a flyer of its own manufacture, which was defective, and wholly unsuitable for the purpose designated by defendant; the defect being that it was not a Boddin flyer, which is standard and of English make. This seemed to be the gravamen of the complaint, and inasmuch as the contract did not contain a word as to the Boddin flyer, or bind the plaintiff to fur-

nish one patented in a foreign country, the demurrer was sustained. As it now appears, this was not the only defect, and but one among four. The allegations of the counterclaim also show that the defects were recognized by the plaintiff, and that efforts were directed by it to correct them, which ultimately proved successful. If this statement of the defendant be correct, then there is such an ambiguity in the contract as will admit an explanation by parol. A question of fact is thus raised, which should be passed upon by a jury.

A bill of particulars accompanies the answer and counterclaim. From this it would appear that the machinery did work, and that the complaint is that it did not do first-class work in the quickest time. If the machinery manufactured for the particular use of a cotton factory was fit, proper, and efficacious for such use, then there could have been no cause of action solely because the buyer found itself disappointed in respect that its operation did not produce a desired result. 141 U. S. 519, 12 Sup. Ct. 46, 35 L. Ed. 837.

But the allegation is that the machinery was not fit, proper, and efficacious for the designed use, and that plaintiff, recognizing this, endeavored to remedy it, and after a time succeeded. This would entitle the defendant to some relief, if his allegation be correct. Upon the whole, I am of the opinion that the trial judge erred in sustaining the demurrer, and in refusing leave to defendant to amend its answer and counterclaim in some way which would avoid objection. The verdict is set aside, and the judgment vacated. The case will be set down for trial, with leave to plaintiff to reply to the answer and counterclaim.