618     APPELLATE COURTS OF ILLINOIS.

Buyers Index Pub. Co. v. Am. Shoe Polish Co., 169 Ill. App. 618.

# Buyers Index Publishing Company, Plaintiff in Error, v. American Shoe Polish Company, Defendant in Error.

## Gen. No. 16,692.

1. MUNICIPAL COURT—*when bill of exceptions not stricken.* If the bill of exceptions and stenographic transcript is tendered in apt time and is subsequently signed by the Court and ordered filed *nunc pro tunc* as of the date when it was tendered the act is substantially complied with.

2. CONTRACTS—*when conversations prior to execution incompetent.* Where the parties have deliberately put their engagements in writing in such terms as to import a legal obligation without uncertainty it is conclusively presumed that the whole engagement was reduced to writing.

3. CONTRACTS—*what not representation authorizing rescission.* A mere promise to do something in the future is not a representation of fact such as will permit the cancellation of a contract.

Assumpsit. Error to the Municipal Court of Chicago; the HON. W. H. HINEBAUGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed and remanded. Opinion filed April 19, 1912.

CRATTY BROS. and JARVIS & HUDSON, for plaintiff in error.

ELBERT·C. FERGUSON, for defendant in error.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

Plaintiff in error instituted a fourth class case in the Municipal Court of Chicago in the nature of a suit in assumpsit. No formal pleadings were filed, but the statement of claim stated that it was for moneys due for advertising in "The Buyers Index" for one year commencing January, 1907, in accordance with a contract entered into October 3, 1906, and accepted by the plaintiff on October 10, 1906. A copy of the contract was appended to the additional statement of claim filed October 1, 1908, and reads as follows:

"Chicago, Ill., Date, October 3d, 1906.
Buyers Index Publishing Company, 59 Pearl Street,
   New York.
Gentlemen:

Please insert our illustration, descriptions, etc., to occupy in advertising section only of the Buyers Index (copyrighted) (published monthly in alternate English and Spanish editions) 1-3 page 6, 1-6 page for six issues, English and Spanish editions, for full year, commencing Jan., 1907—1-6 page 6 issues.

1.   We will within ten days furnish to your order, matter, cuts, etc., subject to your approval, for printing same.

2.   It is understood that we will, within 5 days from date of receipt thereof, return to you corrected the proof which you are to submit to us before issue. If proof is not returned you are to conclude that it is satisfactory to us. Copies of Index containing our advertisement to be mailed to us free of expense.

3.   It is clearly understood that the conditions above and herein set forth embody all agreements and understandings concerning this present contract, as made or had with said Buyers Index Publishing Company, its agents or employes acting in its behalf, either written or verbal.

4.   In consideration of the above we agree to pay to your order $325.00 Three Hundred and Twenty-five Dollars, payable one quarter said amount cash at date of first issue in which our advertisement appears, balance quarterly thereafter.

Full amount, $325.00.

THE AMERICAN SHOE POLISH CO.,
   Per Chas. L. J. Swain,
      Secy. & Manager.

ERWIN DE MONTPELIER,
   Representative Buyers Index.

This contract shall not be valid until accepted by Buyers Index Publishing Co.

The services of the Bureau of Trade Intelligence are at the disposal of the advertiser during the term of this contract."

Endorsed. "Accepted Oct. 10th, 1906, Buyers Index Publishing Co., L. McMillen, Treas."

And also endorsed: "Manufacturers are expected to furnish matter, electros, etc., for printing at least 15 days in advance of pending issue. The Index is published the 15th of every month."

It appears from the record that the foregoing written order or contract was on October 3, 1906, after negotiations with the plaintiff in error's agent, signed by the defendant at Chicago, and sent to plaintiff in error at New York where it was signed by the plaintiff in error.

The defendant in error's advertisement was not prepared in time for the January issue of "The Buyers Index," but was sent on by the defendant in error in February, 1907, with the following letter:

"Chicago, Feby. 16, 1907.

Buyers Index,

    59 Pearl St., New York.

Gentlemen:—We return herewith ad. which evidently will appear in the February issue. We cannot understand why it was not attended to so we could get it in the January issue as originally contracted for.

We should also be pleased to hear from Mr. Montpelier along those lines suggested by him in reference to names, etc., of live dealers and handlers in our line in foreign countries.

Very truly yours,

THE AMERICAN SHOE POLISH Co."

On February 18th, plaintiff in error acknowledged the receipt of the proof, and enclosed to the defendant in error lists of dealers in Cuba, San Domingo, Mexico, Germany and the West Indies, and promised more lists, which were sent later. The advertisement was inserted in the February issue.

On March 5, 1906, defendant in error wrote plaintiff in error again, enclosing corrected proof of the advertisement, stating it had no objection to running the enclosed advertisement in the March issue. It called

attention to the fact that it had not yet seen the publication containing the advertisement, and asked the plaintiff in error to insert the advertisement and cancel the balance of the contract. The missing publication had in fact been sent to the defendant in error, but duplicates were at once mailed to it and the advertisement was inserted in the March issue.

Plaintiff in error declined to cancel the contract and asked for reasons for the request, and inserted the advertisement in alternate English and Spanish for a full year, and has been paid nothing whatever. The plaintiff in error also repeatedly sent lists of names of foreign dealers and all the numbers of the Index containing the advertisement of the defendant in error, and fully performed the contract.

The court upon hearing of the case, before the court without a jury, found in favor of the plaintiff in error for the amount of $50 and costs. Motion for a new trial was overruled, and judgment was entered in favor of plaintiff in error on the finding. Plaintiff in error, being dissatisfied with the judgment, seeks by this writ of error to reverse the same.

A motion was interposed in this court and reserved to the decision of the case, to strike the bill of exceptions and stenographic transcript of evidence from the record, and to affirm the judgment of the Municipal Court. It appears from the record that the bill of exceptions and stenographic report was tendered to the judge for signature June 20, 1910, within the extension of time made for that purpose by an order of the court entered within thirty days after the judgment was rendered. The judge, before whom the case was tried, noted upon the document which was tendered to him the date, and on July 5, 1910, it was signed and ordered filed *nunc pro tunc* as of the date, when it was tendered to the judge. This was a substantial compliance with the terms of the Municipal Court Act as construed by our Supreme Court, and the motion to strike is denied.

Upon the hearing it appeared that the contract was read by the manager of the defendant in error before he signed it. He testified: ''I recall signing that contract. There is no question about it. That is my signature. * * * I read this contract before I signed it.'' It clearly appears therefore that the contract of the parties was reduced to writing and was signed by the defendant in error, after it had been read by its manager.

The court, however, permitted testimony as to what transpired between the parties before the signing of the contract. Mr. Swain, the manager of the defendant in error, was permitted to and testified over objections as follows:

''Q. At the time you met Mr. Montpelier in October, 1906, and before the signing of the contract, did you have any conversation with him? A. I did.

Q. What did he say? A. He went into details as to what he would do for us. He promised to secure a list of names of good live dealers who handled our line of shoe polish in the various countries. I asked for the South American countries in particular. * * * They would furnish us with the necessary information to prepare the advertisement. * * * That he would supply us with the necessary information and lists. He did not come to see us after the signing of the contract.

Q. Did you rely for the value of the advertisement on the circulation that Mr. Montpelier represented his paper had in South America? A. We did.

Q. Was the matter of change of advertisement each month discussed with Mr. Montpelier? A. It was extensively. * * * He took our catalogue, and suggested that he would submit at different times whatever matter would go with the different cuts.''

In our opinion the admission of this testimony was erroneous. Where the parties have deliberately put their engagements in writing in such terms as to import a legal obligation without uncertainty, it is conclusively presumed that the whole engagement was re-

duced to writing.  Weaver v. Fries, 85 Ill. 356; Union Special Sewing Machine Company v. Lockwood, 110 Ill. App. 387; Seitz v. Brewers Refrigerating Mach. Co., 141 U. S. 510.

The preliminary negotiations are merged in a later written contract.  If they are not embodied in the written contract, they are conclusively presumed to have been abandoned.  Boylan v. Cameron, 126 Ill. App. 432.

It appears from the record that oral promises were made by the agent of the plaintiff in error, after the first two issues of the publication had been made.  On June 20th, plaintiff in error wrote the defendant in error, stating that it knew nothing of the oral promises alluded to, and had repeatedly asked for a detailed statement of such promises with a view to granting anything within reason, though it was not named in the contract.  These oral promises were no part of the contract, and the failure to fulfill them, under the circumstances disclosed in the record, constitute no defense to the action.  A mere promise to do something in the future is not a representation of fact, such as will permit the cancellation of a contract.  The promises or representations not contained in the written contract were not admissible, and should not have been admitted in evidence.

As above indicated, the advertisement was to commence with the January issue, but the matter for such advertisement was not furnished by the defendant in error in time for that issue; and the failure to publish the advertisement in January was expressly waived by the defendant.  Where a party to a contract permits and directs the other party to proceed with the work, and accepts performance after the day when it was strictly due under the terms of the contract, he thereby waives the delay.  In our opinion the record shows that the plaintiff in error fulfilled the provisions of the contract on its part to be performed, and there

is no ground shown in the record for the judgment entered by the court. The admission of evidence of negotiations between the parties prior to the signing of the contract, and of subsequent promises by the agent was erroneous as indicated above; and there is no basis in the evidence for the finding. The contract was an entire contract and called for the payment of $325 for the advertising; one fourth of which was to be paid at the date of the first issue in which the defendant in error's advertisement appeared, and the balance quarterly thereafter during the year.

We think the finding of the court is contrary to the evidence. It must have been based on a misconception of the law applicable to the case. The court erred in not granting a new trial, and the judgment is erroneous. Judgment is reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*