MÁRQUEZ, DEMANDANTE Y APELADO, *v.* SUCESORES DE ABARCA, DEMANDADA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Primera, en un pleito sobre daños y perjuicios y cumplimiento de contrato.

No. 1996.—Resuelto en abril 16, 1920.

INCUMPLIMIENTO DE CONTRATO—COMPRAVENTA DE PLANTA REFRIGERADORA—OBLIGACIÓN DEL COMPRADOR.—No es el vendedor de una planta refrigeradora el que está en el deber de averiguar cuáles eran las necesidades del comprador al objeto de suplir una planta que las dejara satisfechas; y los daños que se alegan causados no pueden ser reembolsados a menos que las exigencias del comprador hayan sido reveladas al vendedor y que éste, expresa o implícitamente se hubiera obligado a satisfacerlas.

ID. — ID. — Cuando se vende una planta refrigeradora para conservar de seis a ochocientas libras de pescado y conserva la cantidad mínima por lo menos,

o algo más, entonces no puede alegarse que la planta no se ha ajustado al convenio; y si no habiéndose convenido el tiempo que había de durar la conservación, ésta no dura el tiempo que necesita el comprador, éste deberá demostrar que la planta no podía conservar dicha cantidad por un período de tiempo razonable de acuerdo con la costumbre generalmente seguida en el negocio.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. F. Soto Gras.*

Abogado del apelado: *Sr. C. Travecier.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

En el caso sometido a nuestra consideración la teoría del demandante era que la demandada convino en suministrar al demandante una planta refrigeradora completa y eficiente para la completa conservación de pescado, pero la corte, al dictar su sentencia a favor del demandante se apartó algo de esa teoría. El parecer de la corte como ha sido expresado en su opinión fué en parte como sigue: que el demandante escribió a la demandada pidiéndole un presupuesto para una planta refrigeradora de ciertas dimensiones que se describen en la demanda, manifestándole que la necesitaba para un negocio de pescado y que dicha planta debía tener frío suficiente para conservar el pescado.

La corte declaró probado que el demandante conocía muy poco de instalación de plantas refrigeradoras; que él tenía un negocio de pescado para realizarlo en San Juan trayéndolo de fuera y conservándolo en una planta de refrigeración; que en persecución de esta idea en su carta de febrero 13 de 1917 pidió un presupuesto de la planta, haciendo la indicación del objeto para qué la necesitaba; que la demandada, después de consultar al perito Estebanez dió el presupuesto como aparece de la carta de febrero 19, 1917 y recomendó un tanque especial para mantener la temperatura requerida, sin necesidad de que el compresor trabajara constantemente; que ellos tuvieron una entrevista en San Juan y era para la corte indudable que en la entrevista el demandante explicó satisfactoriamente a la demandada lo que ne-

cesitaba y el negocio a que iba a dedicar la planta; que de aquí nació la especificación que aparece en el exhibit "F" del demandante en el que se describe la planta, y que este exhibit "F" tenía directa relación con el exhibit No. 1 de la demandada del que aparece un diseño del cuarto de refrigeración y que la temperatura para el interior era de 32 grados y la capacidad para enfriar de 600 a 800 libras de pescado, de 85 a 32 grados; que la planta fué construída por la demandada en agosto de 1917; que desde el primer momento la planta funcionó mal y el pescado se descomponía por falta de frío suficiente para su conservación, porque no daba una temperatura regular y constante de 32 grados Farenheit y quizás porque esa misma temperatura no era lo suficientemente baja para conservar el pescado; que dicho pescado se descomponía en dos o tres días y aun en menos tiempo; que el experto de la demandada tuvo conocimiento de ese hecho e intentó remediarlo, pero sin éxito; que así continuó funcionando la planta sin que en realidad pueda decirse que la demandada la hubiera entregado al demandante en condiciones de trabajar para lo que el demandante la necesitaba; que la corte creyó que la prueba la autorizaba a afirmar como lo hizo, que la causa de que la planta no hiciera su trabajo bien era que algunos de los aparatos de la misma eran insuficientes, como el condensador; que el cuarto o cámara estaba mal construído y mal aislado y no conservaba el frío o la baja temperatura, y que, como consecuencia el pescado se conservaba por muy breve tiempo sin descomponerse; que el demandante no pidió una planta para congelar el pescado y guardarlo así poco menos que indefinidamente y que el demandante no lo ha pretendido así, pero que era indudable que él explicó su negocio al experto Estebanez y a la demandada y éstos sabían que él quería conservar el pescado que dedicaba a la venta; que no era lógico suponer que él solamente deseaba conservar el pescado por algunas horas y no por varios días y por tanto que la defensa en ese sentido no era suficiente; que el de-

mandante una vez que ha explicado que su objeto es tener
una planta para producir frío que le conserve el pescado en
condiciones de venderlo ya ha cumplido su parte y que la
demandada tenía el conocimiento técnico necesario que no
tenía el demandante; que la demandada podía investigar para
asegurarse de lo que necesitaba el demandante con toda exac-
titud y entonces hacer el presupuesto y entrar en el con-
trato; que la demandada no podía excusarse fundándose en
que la planta no había sido vendida para congelar pescado,
puesto que la carta de febrero 13 de 1917 les decía: ''el ne-
gocio mío es de pescado y debe tener la planta el frío sufi-
ciente para conservar este producto''. La corte declaró que
no se probó que el demandante tuviera la puerta del cuarto
o cámara fría abierta tan constantemente o tan amenudo que
esto produjera la subida de temperatura en la cámara, pa-
sando entonces la corte a considerar los daños y perjuicios,
dictando sentencia no solamente por los daños realmente oca-
sionados sino exigiendo a la demandada que instale una
planta refrigeradora para la conservación de pescado.

En otras palabras, sostuvo la corte que éste era un con-
trato por el cual las necesidades del comprador fueron cono-
cidas del vendedor y que éste se comprometió a dar cum-
plimiento a dichas necesidades. La corte expresó además
que el compresor y la cámara no tenían capacidad suficiente
pero era solamente otra manera de decir que el aparato no
se ajustaba a las especificaciones, necesidades o exigencias
del demandante.

La conclusión de la corte necesariamente no puede sig-
nificar nada más que bajo las condiciones en que la planta
era manejada por el demandante el compresor y cuarto de
refrigeración no eran eficientes. Determinadas de tal modo
las necesidades del comprador como base del contrato, la
corte asumió entonces, sin analizar más en qué consistían
estas alegadas necesidades que las mismas no fueron cum-
plidas.

No creemos que el demandante sostiene que sus exigen-

cias o necesidades no tenían que ser manifiestas para el vendedor. En cierta parte de su opinión sugiere la corte que el demandado debió haber averiguado cuáles eran las necesidades del demandante pero no podemos seguir enteramente a la corte en esta sugestión y estamos obligados a resolver que las exigencias y necesidades del comprador deben revelarse. Fuera de la descripción de la planta como aparece en los escritos no controvertidos de las partes, el único elemento adicional que aparece de la prueba documental y testifical en el cual insiste el demandante era el de haber escrito él una carta manifestándole a la demandada que éste era un negocio de pescado y deseaba una planta que debía tener el frío bastante para conservar pescado.

En el examen del demandante quedó claramente probado que él esperaba que la planta pudiera conservar de 1,200 a 1,500 libras de pescado por tres semanas. El demandante en una carta escrita bastante tiempo después de la instalación dijo que él indicó que quería conservar el pescado por quince o veinte días manifestando que no lo hizo bajo juramento aunque tuvo oportunidad de hacerlo. Fuera de esto, en cuanto a la cuestión relativa al período de tiempo que había de conservarse el pescado no existía prueba alguna de que el demandante manifestara alguna vez a la demandada o a sus agentes que él deseaba la planta para conservar pescado por un período tan largo o en verdad por algún período de tiempo determinado. Los autos nada dicen respecto a la costumbre seguida en el negocio con excepción de la costumbre de este comerciante en particular y nada sabemos acerca del período corriente durante el cual debe conservarse el pescado. Por el contrario, la prueba tiende a mostrar como propiamente insistió la demandada que el negocio del demandante era de carácter transitorio, que él generalmente compraba pescado en pequeñas cantidades y vendía la mayor parte de su pescado fresco inmediatamente y solo deseaba la planta para la conservación del que le quedaba. No existe prueba alguna en los autos que siquiera

sugiera que esta conservación por un período de tiempo tan largo hubiera sido tenida en cuenta por una u otra de las partes antes de que el contrato fuera realménte consumado. Se ha demostrado que la planta, excepción hecha quizás de un solo caso, prácticamente durante todo el tiempo que fué usada, conservó el pescado de tres a seis días. Las condiciones a que estaba sujeta la planta cuando el pescado se dañaba no han sido demostradas por la prueba, asunto al cual volveremos a referirnos. El demandante se mostró satisfecho con probar en términos generales que en varias ocasiones el pescado se dañaba o ablandaba y tenía que botarse.

Que la cantidad de 600 a 800 libras era la especificada en las negociaciones resultó claro del peso de la prueba y de la opinión de la corte de modo que no discutiremos extensamente la cuestión. Bajo la teoría de corresponder la planta a las necesidades de Márquez Roig lo más que entonces podría exigirse a la sociedad Sucesores de Abarca era que suministrara una planta capaz de conservar de 600 a 800 libras de pescado por un período razonable de tiempo. Era el deber del demandante mostrar que la conservación del pescado por el término de tres o cuatro días no era un período de tiempo razonable sino que debía haber sido mayor, pero más particularmente era necesario que él mostrara que con sujeción a la conservación del pescado en cantidad no mayor de seis a ochocientos libras, la planta no prestó el servicio que se convino. Creemos que esto no lo hizo el demandante.

El demandante, en la silla de testigo, declaró que de tiempo en tiempo tenía que botar alrededor de 1,500 libras de pescado, pero no explica en qué circunstancias lo hacía. Dijo que tenía por costumbre vender el pescado más fresco y expresa su empleado que en ocasiones tenía tanto como mil libras allí de una sola vez. Existe cierta indicación de que el mismo Márquez Roig trató de hacer que la planta conservara hasta 1,400 libras las cuales manifiesta él que podía contener dicha planta. De todos modos se ha suge-

rido la posibilidad y ciertamente no ha quedado excluída de que cuando el pescado se descomponía era porque se ponía en la planta demasiado pescado para los fines del contrato. Tampoco está excluída la posibilidad de que entre 1,400 ó 1,500 libras de pescado descompuesto que se botaba en varias ocasiones, parte de ellas por lo menos pudieran haber estado en la planta por un largo período, o alguna parte del mismo; hasta puede que no haya estado en buena condición al ser colocado en la planta.

Se insistió algo en el hecho de utilizar al experto Estebanez el demandado. Él en realidad actuó para el demandado, instaló la planta o por lo menos se encontraba por allí cuando la planta fué instalada, pero desde el momento en que quedó instalada la planta su intervención quedó limitada a una tentativa para que la planta respondiera a las condiciones bajo las cuales el demandante deseaba que funcionara. Quedó establecido que este experto le indicó al pretendido comprador la diferencia que había entre una planta que podía congelar pescado y conservarlo por mucho tiempo, que es mucho más costosa, y una que meramente mantenga una temperatura de unos 32 grados Farenheit y que Márquez Roig eligió la última clase de planta. Tampoco hay discusión de que la clase de aparato entregado es capaz para alcanzar ordinariamente este grado de frío. El aparato en la práctica no alcanzaba completamente esta baja temperatura. Las partes difieren desde luego en cuanto a sus teorías por esta deficiencia. El apelado alega que la planta no era suficiente para cumplir con el supuesto contrato y los apelantes sostienen que el defecto de la planta en no registrar 32 grados era por razones debidas al comprador así como el abrir y cerrar las puertas, la excesiva cantidad de trabajo que se daba al aparato y otras causas que no dependen del aparato mismo. El experto del apelado señor Seitz al ser examinado declaró que la planta no era defectuosa, sino que era una buena marca de aparato.

Además, cuando se vende una planta para conservar de

seis a ochocientas libras de pescado y conserva la cantidad mínima o por lo menos algo más, entonces no puede alegarse que la planta no se ha ajustado al convenio. Como hemos dicho antes, el demandante estaba en la obligación de demostrar que la planta no podía conservar de seis a ochocientas libras de pescado por un período de tiempo razonable. El demandante no demostró que la planta no conservara de seis a ochocientas libras de pescado. La posibilidad de que por lo menos se trató de que conservara unas mil libras está indicado por la prueba. El demandante dice que él deseaba conservar grandes cantidades de pescado para vender a los vapores, pero que esto era parte de su negocio y que se le puso de manifiesto a la demandada no está revelado en autos. La prueba sí revela sin embargo que una parte del pescado que había de tirarse trató de venderse a los vapores.

*Purity Ice Company* v. *Hawley Down Draft Furnace Company of Maryland,* 22 Appeal Cases D. C. 573, fué un caso en el que se vendió un horno garantizándose que con él se harían ciertas cosas y la corte resolvió que el comprador estaba en la obligación de probar que el horno no se ajustaba a los modelos garantizados. Márquez Roig recibió la planta refrigeradora, la usó por dos o tres meses y conservó cantidades de pescado en ella, y ciertamente estaba él en la obligación, como hemos dicho, de demostrar que la planta no estaba en condiciones de cumplir con el alegado contrato. Es cierto como hemos indicado que el experto de la demandada ayudó a instalar la planta y hasta ese punto era razonable por su correcta instalación. También es verdad, como declaró probado la corte inferior, que dicho experto sugirió el hecho de que el compresor no era bastante grande para la capacidad de la planta. El experto sugirió que la planta debía tener dos veces la capacidad de tubería de expansión pero el perito no dice qué cantidad de pescado contenía la planta entonces. El también dijo que la planta no llegaba a 32 grados Farenheit cuando él la examinaba y dijo que

28 grados sería bastante para conservar pescado por poco tiempo pero no por dos meses. Como hemos dicho él admitió que la planta funcionaba como debía funcionar un aparato York, que era buen modelo de este aparato y hubo prueba tendente a mostrar que la temperatura de 34 grados era quizás la que por lo general es suficiente para cumplir con el contrato.

En este caso así como en el de *Seitz* v. *Brewers Refrigerating Company,* 141 U. S. 510, no hay alegación de fraude, accidente o error. Podemos decir con esa corte que éste no es un caso de un supuesto defecto en el proceso de fabricación conocido del vendedor pero no del comprador, ni de confianza presunta o justificada por parte del comprador en el juicio del vendedor más que en el suyo propio, sino de la compra de un artículo específico fabricado para un uso y fin particular, propio y eficaz para ese uso, pero que en cuanto a su funcionamiento en dar el resultado que se deseaba bajo circunstancias particulares el comprador se encuentra defraudado en su propósito.

Aunque el demandante en este caso confió algo en la opinión de la demandada toda la prueba muestra que dicha demandada vendió y entregó al demandante una planta capaz de realizar todo el trabajo que según había manifestado el demandante era necesario. Además, la corporación demandada explicó que la planta no era una planta de refrigerar enteramente, pues tal planta sería mucho más costosa, sino solamente una capaz de desarrollar 32 grados Farenheit. Que la planta no alcanzó enteramente a este grado no importa porque el no llegar exactamente a este punto podría deberse a las condiciones especiales bajo las cuales funcionaba, sin insistir demasiado en el hecho de que la puerta de la planta frecuentemente se abría y cerraba para los fines del negocio del demandante. La prueba tiende a mostrar que la planta podía conservar de 600 a 800 libras de pescado bajo las debidas condiciones por un número razonable de días.

Hemos seguido hasta cierto punto la teoría de la corte de que la demandada se comprometió a entregar un aparato adecuado para el negocio del demandante. Sin embargo, una planta refrigeradora no es un aparato extraordinario en estos días. La planta York era un tipo bien conocido y se vendía por la demandada de buena fé. La demandada alegó que el aparato ordinariamente producía una temperatura de 32 grados y conservaba de 600 a 800 libras de pescado. Si no cumplió exactamente con esto como en el caso de *Seitz v. Brewers Refrigerating Company, supra*, esta alegación fué una mera opinión y no puede considerarse como una garantía.

Hubo alguna indicación en la prueba de que las paredes de la planta no tenían protección suficiente para impedir que entrara el calor. En otras palabras, que el contacto con otra pared no estaba protegido suficientemente por tabla u otro material, pero aun suponiendo que esto fuera parte de la causa por la cual la planta no se ajustaba a las necesidades del demandante era cosa susceptible de poder ser remediada. Esta cuestión del corcho o aislamiento del aparato tal vez sería una razón por lo menos para una rebaja del precio o para una reclamación directa por daños y perjuicios provenientes de tal deficiencia pero no una acción ordinaria de daños y perjuicios como por un incumplimiento total de un contrato.

No es de importancia, teniendo que ser revocado el caso, pero el contrato en el caso era para instalar una planta específica que fué formalmente instalada. La teoría del demandante de no haber sido notificado formalmente de la referida instalación no está justificada en los autos.

La sentencia debe ser revocada y la demanda desestimada.

*Revocada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.