## Wise *v.* Wilby, Appellant.

*Sale—Contract—Warranty—Condition.*

Where a dealer sells leather knowing that it is bought by the purchaser with a view of selling it to a third person, and warrants that the leather is of good quality, and of the size and tannage represented, such language raises no implication that the sale was conditioned upon the acceptance of the goods by the third person.

Argued Nov. 22, 1905. Appeal, No. 68, Oct. T., 1905, by defendant, from judgment of C. P. Delaware Co., March T., 1903, No. 75, on verdict for plaintiff in case of Henry T. C. Wise, trading as Wise &' Bailey, v. Thomas Wilby. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Assumpsit for goods sold and delivered. Before JOHN-SON, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,295.55. Defendant appealed.

484, (1906).]    Assignment of Error—Opinion of the Court.

*Errors assigned* were various rulings on evidence and instructions, sufficiently referred to in the opinion of the Superior Court.

O. B. Dickson, for appellant.

J. H. Brinton, for appellee.

OPINION BY RICE, P. J., April 23, 1906:

The plaintiff declared upon, and gave evidence to prove, an unconditional sale in Philadelphia to the defendant of a certain number of shoulders of leather at a specified price per pound, which, pursuant to the defendant's direction given at the time of the making of the contract, were consigned and delivered to I. B. Williams & Sons in Dover, N. H.

The defendant's counsel claims : first, that the sale was conditioned upon acceptance of the goods by I. B. Williams & Sons, and that they refused to accept them; second, that the plaintiff expressly warranted them to be of the kind and quality represented by him, and that there was a breach of the warranty.

The court submitted the questions, whether there was (1) an express warranty; (2) a breach thereof, to the jury, with instructions that if they determined them in the defendant's favor, the plaintiff could not recover; therefore, their verdict in favor of the plaintiff for the full amount of his claim must be taken as conclusive of these questions of fact.

The court also instructed the jury that if there was no warranty the defendant had no defense.   This is particularly complained of by the defendant's counsel, because it withheld from the consideration of the jury the question whether the sale was conditioned upon the acceptance of the goods by I. B. Williams & Sons.   A critical examination of the evidence adduced by the defendant, in connection with what was stated when the defendant himself was testifying, has convinced us that the trial judge was fully justified in saying to the jury that the contract between the plaintiff and the defendant, whatever it was, was concluded by the defendant's son at the last interview he had with the plaintiff at the latter's place of business in Philadelphia (this was not excepted to, nor has it been

assigned for error), and in submitting the case to the jury upon the theory that the defense turned upon the question of warranty, and that alone.

Without going into the details of the defendant's examination, it is to be noticed that at a certain stage of it, immediately after he had been asked a question by a juror, his counsel stated, that, as he understood it, the real bargain was made with the defendant's son, and at a later stage, that no question would be raised as to any contract made by the latter in the defendant's business. This suggestion, namely, that the contract under which the goods were sold and consigned to I. B. Williams & Sons, was made with Clarence Wilby acting for his father, the defendant, is borne out by his testimony, and we add, his testimony is irreconcilable with any other theory. This witness was called by the defendant after the latter had testified. According to his version of the transaction, the defendant had been applied to by Williams & Sons for shoulders, but at that time had none to offer. The witness was informed by the defendant that the plaintiff had some to sell, and in consequence of that information he visited the plaintiff's place of business, where he was told by the latter, that he had about 6,000 pounds of these shoulders that he wanted to sell, that they were cut from twenty-eight to thirty-two pound butts, and were " Unaka Tannage." We quote the witness's testimony : " He said the price would be twenty-six cents, and I told him that the price was a little high, and I went over to look at the shoulders, and I saw the size of them and I said I thought they were too light for our use, and he said if I wanted to buy the shoulders he would make the price twenty-five and a half cents, less five per cent off in ten days. So I told him I thought the shoulders were too light, and I would let him know the following week." He says he reported this to his father, the defendant, and then wrote to I. B. Williams & Sons from whom a reply was received on November 15, 1902. About a week later, in consequence of this reply and what his father had said, he again visited the plaintiff's place of business. The substance of his testimony as to what occurred at this interview is, that he again told the plaintiff the shoulders were too light for the defendant's use, but that they had had an inquiry from Williams & Sons for some shoulders and he thought they

could use them, if they were as the plaintiff represented as to size and tannage; that he looked at the bundles of shoulders but did not take them apart; that when he asked for a knife to cut them apart, so that he could examine them more closely, the plaintiff said "they were a good lot of shoulders, and he could represent them to be all right, and he would guarantee them." To the question, what then took place, the witness answered: "Well, I said, 'If you can guarantee them to be all right, why you can ship them to I. B. Williams.' So he asked me what way to ship, and I told him by Boston boat." He testifies that the bundles were then weighed, he "checking up" the weight, after which he returned home, and reported to his father, the defendant, that he had bought the shoulders. According to the testimony of the witness, this interview must have taken place on or about November 22, and the uncontradicted testimony of the plaintiff is, that he shipped them on that date in the name of the defendant, as consignor, to I. B. Williams & Sons, as consignees. It is also undisputed that they duly reached their destination.

This testimony would support a finding by the jury that the defendant bought the shoulders with a view of selling them to I. B. Williams & Sons, and that the plaintiff was made aware of this fact in the negotiations which preceded the conclusion of his bargain. But we think it quite clear that it would not support a finding that he warranted them to be satisfactory to I. B. Williams & Sons, or that the sale was conditioned upon the latter's acceptance of them. In an action upon a contract of sale to recover the price of an article which the plaintiff dealt in, but did not manufacture, it is proper to charge that unless the jury believe from the evidence that the plaintiff expressly warranted the article to work satisfactorily, or fraudulently or falsely represented that it would work satisfactorily, then the plaintiff is entitled to recover, even if the jury find that it did not work satisfactorily: Livingston v. Stevenson, 163 Pa. 262. The plaintiff here may have been willing to warrant the truth of his representation as to the quality, size and "tannage" of the shoulders, and unwilling to leave the decision of that question to the persons to whom the defendant proposed to sell them, or to agree that if these third persons, with or without reason, refused to accept them, the defendant

should not be bound to pay for them. True, where a contract is oral the ascertainment of the words used and the meaning of the words is for the jury, but while their latitude in this regard is very broad it does not warrant them in putting an utterly unreasonable interpretation upon them. The language alleged to have been used in the formation of this contract is indefinite at the best, but the most that it imports, under any reasonable interpretation the jury could put upon it, was a warranty that the shoulders were of good quality, and of the size and " tannage " alleged to have been represented by the plaintiff. It logically follows, that the refusal of I. B. Williams & Sons to accept them, would not, of itself, constitute a defense. Therefore, the rejection of letters addressed to the defendant bearing their typewritten signatures, as proof of their refusal to accept the goods, would not have been prejudicial error, even if the rule as to hearsay testimony does not apply, and the objection to the proof of the signatures is not valid.

All the assignments of error are overruled and the judgment is affirmed.