## KANSAS CITY BOLT & NUT CO. v. RODD.

(Circuit Court of Appeals, Sixth Circuit.   March 2, 1915.)

### No. 2561.

1. SALES ⊂═⊃273—WARRANTIES—IMPLIED WARRANTY OF FITNESS FOR PARTICULAR USE.

Where automatic nut-tapping machines, sold by defendant to plaintiff, had been on the market a comparatively short time, plaintiff had never seen or had an opportunity to inspect such a machine, and defendant's circulars stated that they would automatically tap hot or cold pressed nuts and any style of thread or pitch in hexagon or square nuts of iron, steel, brass, or any usual material from which nuts were made, and directed that samples of blank and tapped nuts should accompany inquiries, and the machines were purchased for use on the kind of stock regularly used by plaintiff, with defendant's knowledge of such intended use, there was an implied warranty that they would suitably work such stock, the rule that, when a known, described, and definite article is ordered and supplied, there is no warranty that it shall answer the particular purpose intended by the buyer, though stated by him, did not apply, and it was error for the court to charge that defendant did not warrant that the machines were fit for any particular purpose, or for tapping any special kind of nuts, that plaintiff could recover only by showing that the machines were unsuitable to perform the ordinary work which they were made to do in tapping ordinary nuts, and that evidence of plaintiff's reliance upon the alleged warranty should be disregarded.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 772–776; Dec. Dig. ⊂═⊃273.]

2. SALES ⊂═⊃288—WARRANTIES—WAIVER BY ACCEPTANCE.

The doctrine that an implied warranty does not survive acceptance does not apply, unless the acceptance is with full knowledge of all the conditions affecting the character and quality of the article.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 817–823; Dec. Dig. ⊂═⊃288.]

3. SALES ⊂═⊃261—WARRANTIES—FAILURE TO INCLUDE IN SUBSEQUENT CONTRACT.

Where a contract of sale consisted entirely of correspondence, all of the correspondence together made up the contract, and there was in no proper sense a "subsequent contract," within the rule that representations will not constitute an express warranty, where the parties subsequently enter into a written agreement which is silent upon that subject.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 727–735; Dec. Dig. ⊂═⊃261.]

4. SALES ⊂═⊃168½—WARRANTIES—SALES ON TRIAL.

Where, though a machine was sold on 30 days' trial to enable the buyer to determine whether it would want other similar machines, the buyer was in such urgent need of the machines that, without waiting for the first machine, it asked the seller to build eight machines with the utmost dispatch and ship them to it, and the subject of 30 days' trial was not then or thereafter referred to, it was apparent that the buyer was content to rely upon the situation as disclosed by the seller's circulars and the correspondence with the seller, and not upon a trial of the machines, and instructions on the theory that the sale was a sale on 30 days' trial were improper.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 409–421; Dec. Dig. ⊂═⊃168½.]

5. SALES ⊂═⊃168½—WARRANTIES—SALES ON TRIAL.

Where, exactly 30 days from the receipt of the first two automatic nut-tapping machines ordered by plaintiff, parts thereof were returned to de-

fendant because broken through alleged failure to work properly, correspondence was had concerning trouble with the machines, taps and nuts were returned to defendant by his request, and a man was furnished by him to see if he could make the machines work, without any suggestion that they were subject to 30 days' trial, the parties treated the complaints as made in time, and if the sale was in fact subject to 30 days' trial the provision was waived, so far as not complied with.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 409–421; Dec. Dig. ☞168½.]

**6. SALES ☞440—ACTIONS FOR BREACH OF WARRANTY—EVIDENCE.**

In an action for breach of a warranty on a sale of eight automatic nut-tapping machines, a question, asked a witness for plaintiff, as to why he continued the effort to use the machines after having trouble with them, to which he would have answered that the seller held out encouragement that continued effort would meet with success, and a question, asked another witness, as to whether there was any marked effort to operate the machines when a single one arrived, as an individual machine or in groups of two, to sustain the buyer's contention that there was no concerted effort to test the machines until all of them arrived and were installed, were pertinent as affecting the good faith of the buyer's claim that it was unable to operate the machines.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1261–1276; Dec. Dig. ☞440.]

In Error to the District Court of the United States for the Northern District of Ohio; William L. Day, Judge.

Action by the Kansas City Bolt & Nut Company against Robert J. Rodd. Judgment for defendant, and plaintiff brings error. Reversed, and new trial ordered.

In the deposition of the witness Stoddard, he testified that they had trouble with the machines. Such testimony was followed by a question as to why he continued the effort to make the machines tap nuts, to which an objection was sustained. The answer in the deposition was that Rodd held out encouragement that continued effort would meet with success. The witness Neville was asked whether or not there was any marked effort to operate or attempt to operate the machines after they were coupled in a battery, or when a single one arrived, as an individual machine or in groups of two, to which an exception was sustained. It was plaintiff's contention that there was no serious, concerted, and determined effort made until all of the machines ordered arrived and were installed.

J. H. Smart, of Cleveland, Ohio, for plaintiff in error.
Orlano Wilcox, of Akron, Ohio, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff in error, a manufacturer of bolts and nuts, ordered from defendant in error eight automatic nut-tapping machines of defendant's manufacture. The machines were all received, and six were paid for. Plaintiff in error brought this suit for damages for breach of alleged warranty that the machines would do good work and were fit for the purpose for which plaintiff bought them and for which defendant sold them. Defendant denied liability,

and set up a counterclaim for the purchase price of the two machines unpaid for. On a trial by jury the issues were found in defendant's favor, and judgment entered accordingly. The errors assigned relate to the charge of the court and to the exclusion of evidence.

Tapping is the process of threading nuts. Until the purchase in question, plaintiff had used only hand-operated tapping machines. Having seen defendant's circular descriptive of his machine, plaintiff wrote defendant, asking prices. Defendant replied by letter that his machine of the size called for "has only recently been placed on the market, but it has been thoroughly tested," and spoke of the great favor with which the machine had met where already used. Plaintiff accordingly ordered of defendant by letter one machine, at a price of $500, saying that "if found quite satisfactory" seven more would doubtless be ordered at a price of $475 each for the eight machines. Defendant replied that he had "such confidence in the merits of the machines and have met with such universal success that we will send you a machine, if you find it satisfactory you will pay for the same in 30 days, if you should order the remaining seven the price will be as you state, $475"; and on receiving order for shipment wrote plaintiff on October 18th asking that, "in order that I may set the machine up to suit your nuts," plaintiff send a quantity of blanks, "such as you will require the machine to tap." In advance of the delivery of the first machine, plaintiff on October 18th wrote defendant, asking him to "increase our recent order to eight machines." The respective letters of the latter date presumably "crossed in the mails." The last order was accepted by letter; defendant, in connection with the acceptance (and an assurance that the machines would be built as speedily "as is consistent with good work"), asking plaintiff's manager to send samples "of the nuts that you propose to use on the machines," adding:

"I presume you tap your nuts U. S. S. thread, as a general rule. If you will let me have these nuts, I will look them over and write you further."

Five days later defendant asked plaintiff, in case it required the machines to tap both hexagonal and square nuts, to send on a quantity of each kind, and to include a "bolt or stud threaded to show what your threads are." The samples asked for were duly sent. On February 14th following defendant shipped two machines, which reached plaintiff February 28th; the next two machines were shipped March 2d or 3d, and would normally have reached plaintiff about two weeks later. The last two machines were shipped April 29th, and presumably reached plaintiff about the middle of May. Meanwhile, defendant had provided plaintiff with sample taps (threading tools) for each size of machine bought, the samples to be used for making up a supply of taps to be made or procured by plaintiff. Plaintiff's first complaint of the machines was made March 28th, and related only to the breaking of gears and other minor matters, the defects being promptly supplied. But on June 1st plaintiff complained of serious trouble with the machines, including inability to get proper daily output, that the clutches would not pull sufficiently to tap the nuts, and that many of the nuts were "reamed"—that is, the tap went through without

making a thread. After several requests, beginning with June 1st, defendant, about July 13th, sent a demonstrator to instruct in the operation of the machines. There is a sharp conflict as to the effectiveness of this demonstration, but the plaintiff finally abandoned the use of the machines as worthless. Its testimony tends to support the complaints made previous to the demonstration, as well as an alleged frequent breaking of taps, and a general inability of the machines to work plaintiff's stock as well as the ordinary hand machines.

The first question of importance arises out of defendant's contention that the failure of the machines to work satisfactorily was due to the character of the nuts used by plaintiff—defendant's claim being that the nuts (which were hot-pressed) were of poor quality, made of scrap bar, composed of steel and iron, carrying more or less scale and burrs or fins, the burrs preventing the nuts from slipping down in the "fountain" and from engaging the tap; that the holes in many of the nuts were small and out of center, causing reaming; that the quality of the metal (said to be more difficult to work than clear iron or clear steel) caused the taps to wear rapidly, necessitating frequent grinding or renewal, and requiring an unusually hard tap. On the other hand, hot-pressed nuts are naturally less perfect and clean-cut than cold-pressed, and always carry some scale in the holes. There was testimony that the stock on which plaintiff used the machines was the same as always used on its hand machines, and conformed strictly, both in material and otherwise, to the samples furnished defendant, under the circumstances stated. There was also testimony that the class of material used by plaintiff was the ordinary commercial hot-pressed nut.

[1] 1. The jury was instructed that defendant did not warrant "that these machines were fit for *any particular purpose,* or for tapping *any special kind* of nuts," and that plaintiff could recover only by showing that defects existed in the machines "which rendered them unsuitable to perform *the ordinary work* which Rodd's automatic nut tappers are *made to do* in automatically and commercially tapping the *ordinary nuts sold in the trade.*" (Italics ours.) This instruction effectually precluded recovery for failure of the machines to properly work plaintiff's stock, as distinguished from *ordinary nuts sold in the trade,* and notwithstanding plaintiff purchased the machines for use on the kind of stock regularly used by it, with defendant's knowledge of such intended use.

We think this instruction erroneous. The general rule, as stated in Dushane v. Benedict, 120 U. S. at page 636, 7 Sup. Ct. at page 697, 30 L. Ed. 810, is this:

"When a dealer contracts to sell goods which he deals in, to be applied to a particular purpose, and the buyer has no opportunity to inspect them before delivery, there is an implied warranty that they shall be reasonably fit for that purpose."

And, as expressed in Jones v. Just, L. R. 3 Q. B. 197 (which case was cited with approval in Dushane v. Benedict):

"It must be taken as established that on the sale of goods by a manufacturer or dealer, to be applied to a particular purpose, it is a term in the contract

that they shall reasonably answer that purpose, and that on the sale of an article by a manufacturer to a vendee who has not had an opportunity of inspecting it during the manufacture, that it shall be reasonably fit for use or shall be merchantable, as the case may be."

See, also, Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 113–116, 3 Sup. Ct. 538, 28 L. Ed. 86, and cases there cited.

The general rule has this qualification, among others, that when a known, described, and definite article is ordered of a manufacturer, although it be stated by the purchaser to be required for a particular purpose, yet if the known, described, and definite thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer. Seitz v. Brewers' Refrigerating Co., 141 U. S. 510, 518, 12 Sup. Ct. 46, 35 L. Ed. 837. The learned District Judge evidently regarded the instant case as falling directly within the qualification mentioned, and as applied in the case last cited. We think this a mistaken view, and that the case is governed by the general rule rather than by the qualification stated. As we understand the rule, the existence or nonexistence of an implied warranty of fitness for a particular use depends upon whether or not the buyer is presumed to have relied upon his own judgment or on the skill or judgment of the seller. See Kellogg Bridge Co. v. Hamilton, supra; also Pullman Car Co. v. Metropolitan Ry. Co., 157 U. S. 108, 15 Sup. Ct. 503, 39 L. Ed. 632, where the general rule and the exception stated are referred to.

The Ohio Uniform Sales Act (G. C. § 8395[1]) provides that:

"When the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose."

And subdivision 4 provides:

"(4) In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

We understand that these provisions substantially enact the common-law rule, unless possibly (which we do not decide) subdivision 1 substitutes a question of fact for the presumption that the buyer relied on the seller's skill or judgment. See Williston on Sales, § 248. See, also, the reference made by Judge Putnam to the English Sales of Goods Act of 1893 in Nashua Iron, etc., Co. v. Brush, 91 Fed. 214, 33 C. C. A. 456. See, also, Kellogg Bridge Co. Case, supra, 110 U. S. at page 116, 3 Sup. Ct. 538, 28 L. Ed. 86. In fact, plaintiff alleged and offered to prove reliance upon defendant's warranty.

In the instant case, the machines ordered were not in a proper sense a "known" article, so far as plaintiff was concerned. True, they were described in defendant's circular; but no machine of the kind seems ever to have been seen by plaintiff, the machine itself was comparatively recently on the market, and these facts presumably prompted defendant's reference to the great favor with which the machine had already met. Plaintiff had no opportunity for previous inspection, and we think was entitled to rely, and will naturally be presumed to have

relied, upon the seller's skill or judgment. Such right of reliance is strengthened by the express reference in defendant's circular to his machine as "for automatically tapping hot or cold pressed nuts," with the statement that "the machines will tap any style of thread or pitch in hexagon or square nuts of iron, steel, brass, or any usual material from which nuts are made." Whatever implication may be thought to result from the reference to "any usual material" would seem to be overcome by the express direction that "samples of blank and tapped nuts should accompany inquiries," thus naturally implying that the machine, if furnished, will be adapted to work on samples so furnished. We are not called upon to consider whether the circulars contain an express warranty that the machines would suitably work plaintiff's stock; it is enough for the purpose of this review that such warranty be implied.

It is urged that defendant desired samples of plaintiff's stock merely for the purpose of suitably adjusting the machines thereto. But, assuming that this is so, we cannot see that plaintiff's right to rely upon the implied warranty in question is thereby affected. It follows, from the views we have expressed, that the court erred also in instructing the jury not to consider evidence of plaintiff's reliance upon the alleged warranty.

[2, 3] The doctrine that an implied warranty does not survive acceptance of the thing sold does not in any case apply unless at least the acceptance is with full knowledge of all the conditions affecting the character and quality of the article. This would at the most be a question of fact for the jury. Nor is the case affected by the rule that representations as to what the machine will do will not constitute an express warranty, where the parties subsequently enter into a written agreement which is silent upon that subject; for here the contract consists entirely of correspondence, all of which must be considered together as making up the contract. There was not, in a proper sense, a subsequent contract.

[4, 5] 2. The question whether the machine was suitable for tapping the ordinary commercial nuts was submitted to the jury, but with an instruction that if the defects complained of could reasonably be discovered by plaintiff within 30 days after delivery of the respective machines there was a substantial acceptance, precluding recovery, otherwise plaintiff had a reasonable time after the 30 days to examine and return, and that if the defects could reasonably have been discovered within 30 days plaintiff waived the right to refuse the last two machines furnished, provided they were regular Rodd's automatic nut tappers and the same as the six machines furnished and paid for.

This instruction was upon the theory that the order for the first machine was a trial order, and that the inclusion of the other seven converted the sale of the entire eight machines into a sale on 30 days' trial. We think this an incorrect theory. The order for the first machine was accepted as a trial order; the object of the trial being largely, though not entirely, to determine whether plaintiff would want the other seven. But plaintiff was in "such urgent need of tapping machines" that it could not wait for the first machine, and asked to have the eight machines built with the "utmost dispatch," and shipped

to plaintiff. The subject of 30 days' trial was not then or thereafter referred to. We think the parties could not properly have intended so unusual a thing as a trial order of eight machines, each to be built, and that the more natural view is that the plaintiff, considering his urgent need, was content to rely upon the situation as disclosed by the circulars and correspondence. However, exactly 30 days from the receipt of the first two machines, parts were returned to defendant because broken through alleged failure to work properly. The succeeding correspondence contained in the record was had, the return of the taps and nuts requested by defendant and made by plaintiff, and the request for a competent man "to see if he can make [the machine] work," made by plaintiff and complied with by defendant, and all without any suggestion that the machines were subject to 30 days' trial. The parties thus treated the complaints as made in time; and if the sale was in fact subject to 30 days' trial, the provision would seem to have been waived so far (if at all) as not complied with. As the record stood, we think the instruction in question erroneous.

[6] 3. We think the subject aimed at in the question to the witness Neville and the question to the witness Stoddard was pertinent, as affecting the good faith of plaintiff's claim that it was unable to operate the machines.

The judgment of the District Court is reversed, with costs, and a new trial ordered.