## THE ST. S. ANGELO TOSO.

(District Court, E. D. Pennsylvania. May 26, 1920.)

No. 28.

1. Sales ⬳273 (3)—Reliance on seller presumed in absence of opportunity to inspect.

Under Sales Act Pa. 1915 (P. L. 547) § 15, subpars. 1, 2, which was a re-enactment of the existing common law, there is an implied warranty of fitness for use where the seller knew the goods were ordered for a particular purpose, and the buyer relied on the seller, and reliance by the buyer may be presumed from absence of opportunity to inspect before delivery of the goods, so that a seller of coal delivered in a ship's bunkers for steam purposes impliedly warrants it fit for that purpose.

2. Sales ⬳273 (1)—Reliance on seller must be shown.

To establish an implied warranty of fitness for purpose, the fact of reliance by the buyer on the seller must be shown, either by proof of the actual fact or by proof of facts from which it may be presumed.

In Admiralty. Libel by the Charles D. Norton Coal Company against the steamship St. S. Angelo Toso. On final hearing. Libel dismissed.

Vivian Frank Gable and Owen J. Roberts, both of Philadelphia, Pa., for libelant.

Malcolm Sumner, of New York City, and Henry P. Brown, of Philadelphia, Pa., for respondent.

THOMPSON, District Judge. The Charles D. Norton Coal Company filed its libel against the steamship St. S. Angelo Toso, claiming upon a cause of breach of contract for supplying 992 tons of bituminous coal during the month of August, 1917, at the agreed price of $5.81 per ton f. o. b., amounting to $5,763.52, with interest from August 23, 1917. The coal was supplied under the following circumstances:

The respondent, the Societa Nazionale di Navigazione, the owner of the Toso, had on July 10, 1917, in pursuance of telephone conversations, purchased coal for its steamship Fagernes, through an order by letter as follows:

"July 10, 1917.

"Charles D. Norton Coal Company, Stephen Girard Building, Philadelphia, Pa.—Gentlemen: Confirming our telephone conversation of even date, will you kindly arrange to furnish three hundred eighty-five (385) tons of first

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

quality bituminous coal for bunker to our S. S. Fagernes, due to arrive in this port within the next few days? We may desire delivery of this coal either at Port Richmond or Pier 40, South Wharves, and as it must be handled by lighter alongside the ship, we presume either point will be satisfactory to you. The price of this coal is to be $6.82 per ton, f. o. b. steamer; payment to be made before the sailing of the steamer. This price includes trimming in bunkers. As soon as the ship is reported, we will advise you. Thanking you for your prompt attention to this, we are,

"Yours very truly,                    Societa Nazionale di Navigazione,
"F.L.G.              .                              Manager."

During the negotiations for the sale for the Fagernes, Mr. Brown, president of the libelant company, informed Capt. Maggi, manager of the respondent, and Miss Grund, its employé, that if given more time upon the next purchase the libelant would be able to supply a better quality of coal than it delivered to the Fagernes. Subsequently Miss Grund telephoned Mr. Brown and told him that the Toso had sailed from Genoa, and that the respondent would need 1,000 tons of bituminous coal for its bunkers on its arrival at Philadelphia. Mr. Brown quoted a price, which was accepted by Miss Grund, and the following letter was sent the libelant:

"238 Dock Street, Philadelphia, Aug. 4, 1917.—

"C. D. Norton Coal Company, Stephen Girard Building, Philadelphia, Pa.— Dear Sir: Confirming our telephone conversation of even date with Mr. Brown, we desire you to enter our order for one thousand (1,000) tons bituminous coal for delivery to our steamers between August 15th and 31st. It is understood that the price for this coal is to be five dollars and eighty-one cents ($5.81) per ton trimmed in bunkers. Terms cash on delivery. Kindly acknowledge receipt and oblige,

"Yours very truly,                    Societa Nazionale di Navigazione,
                                      "G. Maggi, Manager."

To the above letter the libelant sent the following reply:

"Philadelphia, Aug. 8, 1917.

"Societa Nazionale di Navigazione, 238 Dock Street, Philadelphia—Dear Sir: Your favor is at hand ordering one thousand (1,000) tons of bituminous coal for delivery to your steamers about August 15th, price $5.81 gross ton trimmed in bunkers, which we will be pleased to give our attention. Terms, cash upon delivery. Thanking you for the order and awaiting your further favors, we are,

"Yours truly,                    Charles D. Norton Coal Company,
                                  "Per Walter P. Brown, President."

The respondent defends upon an alleged breach of warranty by the libelant, based upon the following propositions:

(1) The respondent, expressly or by implication, made known to the libelant the particular purpose for which the coal was required.

It is not denied by the libelant that it was made part of the terms of the contract between the parties that the libelant was to deliver bituminous coal in the steamer's bunkers, to be used for steam purposes in propelling the steamer.

(2) The respondent relied upon the libelant's skill and judgment.

This is denied by the libelant, and is the real point of controversy in the case, which will be discussed hereinafter.

(3) The coal was not reasonably fit for the purpose for which it was required.

This proposition is fully sustained by the evidence, which shows that the coal supplied contained foreign matter, consisting of slate, mud, sand, and stone, which was estimated by the respondent's witnesses to compose about 25 per cent. of its bulk. As a result of tests made on board the vessel, the coal would not keep up steam; the fires could not be kept up, and consequently pressure could not be maintained in the boilers. While the normal speed of the vessel was 12 miles an hour, the steam developed with the coal supplied would not enable it to maintain speed in excess of 7 miles an hour.

The libelant relies upon the two propositions:

(1) The respondent did not rely upon the skill and judgment of the libelant; and

(2) The libelant's undertaking was performed by delivery to respondent of merchantable bituminous coal trimmed in bunkers.

As to the libelant's second proposition, there can be no dispute that the coal delivered was bituminous coal, and its merchantability is established by evidence of those experienced in the trade, and the fact that after unloading from the Toso, it was sold for $5.50 per ton. The contest in the case, therefore, is narrowed down to the question whether, in supplying coal, which was bituminous coal of merchantable quality, but which was not reasonably fit for use as bunker coal, the libelant committed a breach of an implied warranty.

Section 15, subparagraphs 1 and 2, of the Pennsylvania Sales Act of 1915 (P. L. 547), is as follows:

"Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. (2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

In order, therefore, to raise an implied warranty that the coal was to be reasonably fit for use as bunker coal, it is necessary, in addition to the respondent having made known to the libelant the particular purpose for which the coal was required, that it also appear that the respondent relied upon the libelant's skill or judgment. There is nothing in the respondent's letter to the libelant of August 4, 1917, nor in the reply of August 8, 1917, from which alone the inference of such reliance could be drawn. The respondent for proof of reliance upon the libelant's skill or judgment relies upon the fact that the letter of July 10th called for "first quality bituminous coal," and that during the negotiations Mr. Brown, president of the libelant, informed Capt. Maggi, respondent's manager, and Miss Grund, that if the libelant were given more time on the next purchase, it would be able to supply a better quality of coal than that delivered to the Fagernes. This conversation had relation to anticipated future business between the parties.

265 F.—50

At the time of the transaction it was known to both that it was difficult to get coal, owing to the market conditions due to the war, and that the respondent ordered the coal for the Toso as soon as it appeared that it had left Genoa, and confirmed the order by the letter of August 4th for delivery between August 15th and 31st, thus taking advantage of Mr. Brown's offer by giving notice a longer time before delivery than in the case of the Fagernes.

[1] In my opinion the implied warranty arose, without regard to prior negotiations, in view of the fact that the respondent had no opportunity of inspection before delivery. The Sales Act raises an implied warranty where, in addition to the fact that the buyer has made known to the seller the particular purpose for which the goods are required, it appears the buyer relies on the seller's skill or judgment. Before the passage of the Sales Act, where the seller knew the particular purpose for which goods were required, and there was no opportunity for inspection by the buyer before delivery, a presumption of reliance upon the seller's skill or judgment was held to arise.

In Kansas City Bolt & Nut Co. v. Rodd, 220 Fed. 750, 136 C. C. A. 356, in discussing the Ohio Uniform Sales Act (Gen. Code, § 8395 [1]), which contains a similar provision to that of section 15, subparagraph 1, of the Pennsylvania act, the court said:

"We understand that these provisions substantially enact the common-law rule, unless possibly (which we do not decide) subdivision 1 substitutes a question of fact for the presumption that the buyer relied on the seller's skill or judgment."

And the court held:

"Plaintiff had no opportunity for previous inspection, and we think was entitled to rely, and will naturally be presumed to have relied, upon the seller's skill or judgment."

The general rule at common law, as stated in Dushane v. Benedict, 120 U. S. at page 636, 7 Sup. Ct. at page 697 (30 L. Ed. 810), is this:

"When a dealer contracts to sell goods which he deals in, to be applied to a particular purpose, and the buyer has no opportunity to inspect them before delivery, there is an implied warranty that they shall be reasonably fit for that purpose. Jones v. Just, L. R. 3 Q. B. 197, 203; * * * Kellogg Bridge Co. v. Hamilton, 110 U. S. 108."

And in Kansas City Bolt & Nut Co. v. Rodd, supra, the court said:

"As we understand the rule, the existence or nonexistence of an implied warranty of fitness for a particular use depends upon whether or not the buyer is presumed to have relied upon his own judgment, or on the skill or judgment of the seller."

[2] The reliance of the buyer on the skill or judgment of the seller must appear; that is, it must be a fact proved in the case, either through direct evidence of the fact itself, or evidence of facts from which the inference or presumption may be drawn. One of the facts from which such inference may be drawn is the fact of knowledge by the seller that the goods are to be applied to a particular purpose, but that fact, without the lack of opportunity for inspection, would be insufficient; but when knowledge of the particular use is shown,

and the lack of opportunity of inspection is also shown, then the presumption of reliance upon the skill and judgment arises.

There is nothing in the terms of the Sales Act which requires a different rule of evidence to establish reliance upon the skill or judgment of the seller from the rule generally accepted prior to the passage of the act. As the fact of knowledge is shown, and the inference or presumption of reliance may be drawn from that fact and the lack of opportunity of inspection, a warranty of fitness is implied under the statute. See Gillespie Brothers & Co. v. Cheney, 65 L. J. R. Q. B. Div. 552.

It is concluded, therefore, that the implied warranty of fitness under the terms of the Sales Act was broken by the libelant, and it is therefore not entitled to recover.

A decree may be entered, dismissing the libel, with costs.