## THE ST. S. ANGELO TOSO.

(Circuit Court of Appeals, Third Circuit. February 11, 1921.)

No. 2597.

1. **Evidence** ☞441(9)—**Not admissible to establish express warranty not contained in contract.**

Where there was no warranty in a contract purporting to contain the whole engagement of the parties, evidence to prove an express warranty *held* properly excluded.

2. **Sales** ☞273(3)—**Implied warranty of fitness of coal for intended use.**

Sales Act Pa. 1915 (P. L. 547) § 15 (Pa. St. 1920, § 19663), providing that "where the buyer, expressly or by implication makes known to the seller the particular purpose for which the goods are required and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not) there is an implied warranty that the goods shall be reasonably fit for such purpose," *held* to apply to a sale of coal to a navigation company, to be delivered to buyer's steamers and paid for at a stated price per ton "trimmed in bunkers," and where it was understood that the seller would buy the coal from others, and the buyer therefore had no opportunity to examine it, there was an implied warranty that the coal delivered should be reasonably suitable for steaming purposes.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Libel by the Charles D. Norton Coal Company against the steamship St. S. Angelo Toso. Decree for respondent, and libelant appeals. Affirmed.

For opinion below, see 265 Fed. 783.

Vivian Frank Gable, William E. McCall, Jr., and Owen J. Roberts, all of Philadelphia, Pa., for appellant.

Malcolm Sumner, of New York City, and Wolf, Block & Schorr and Joseph J. Brown, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. Charles D. Norton Coal Company filed a libel against the "St. S. Angelo Toso" to recover the contract price for 992 tons of coal sold to Societa Nazionale di Navigazione, the owner of the steamship. The respondent pleaded a warranty as to the quality of the coal and defended on its breach. The court, finding warranty and breach, dismissed the libel. This appeal followed.

The case arose out of an oral contract confirmed by correspondence wherein the Navigation Company purchased from the Coal Company "1,000 tons bituminous coal for delivery to our steamers, * * * price * * * to be $5.81 per ton trimmed in bunkers."

When alongside the steamer and after its failure to respond satisfactorily to burning tests, the Navigation Company rejected the coal and refused payment. It remained on lighters until sold to another concern.

[1] The warranty pleaded was both express and implied. Nothing in the terms of the contract indicated an express warranty. As the contract purported to contain the whole engagement of the parties (Seitz v. Brewers' Ref. Co., 141 U. S. 510, 517, 12 Sup. Ct. 46, 35 L. Ed. 837), the learned trial judge was quite right in disregarding evidence offered in proof of an express warranty,—which concerned previous negotiations for the purchase of bunker coal of first quality for another ship,—as forming no part of the contract in suit. The sole question therefore is one of implied warranty and turns on the Pennsylvania Sales Act of 1915, P. L. 547 (Pa. St. 1920, §§ 19649–19726), and on the sufficiency of the evidence to invoke its provisions. The statute provides:

"Section 15. * * * Where a buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

This section of the Pennsylvania Sales Act is in the exact terms of a section of the Uniform Sales Act adopted by many states, which in turn followed quite literally a like provision of the English Sale of Goods Act of 1893. Williston on Sales, Appendix. It is in effect a qualification of the doctrine of caveat emptor. Though its principle was found in the civil law, it had its rise at common law in a dictum

in Gray v. Cox, 4 Barn. & C. 108, 115 (1825), grew into general application through decisions of courts in diverse jurisdictions, and is now firmly established by many statutory enactments.

In this case an implied warranty that the coal shall be fit for the purpose for which it was purchased depends for its validity upon the two statutory essentials—that the buyer had communicated to the seller the particular purpose for which the coal was required and that it relied on the seller's skill and judgment in selecting it. As to the first essential, it is not denied that the Navigation Company, the buyer, in requiring that the coal be "trimmed in bunkers" thereby made known to the seller the particular, and indeed the only conceivable, purpose for which coal so placed was to be used, namely, that of making steam by which to propel the ship.

Having complied with the statute in disclosing the purpose for which the coal was required, the next question was, whether the coal was of a quality to meet that requirement. The learned trial judge made findings of fact—which we see no reason to disturb—that the coal which the seller supplied the buyer

"contained foreign matter consisting of slate, mud, sand and stone which was estimated by the respondent's witnesses to compose about twenty-five per cent. of its bulk. As a result of tests made on board the vessel, the coal would not keep up steam; the fires could not be kept up and consequently pressure could not be maintained in the boilers. While the normal speed of the vessel was twelve miles an hour, the steam developed with the coal supplied would not enable it to maintain speed in excess of seven miles an hour."

On these findings we affirm the judge's conclusion that the coal, although of merchantable quality as evidenced by its subsequent sale, was not reasonably fit for the purpose for which it was required. Having established this element of an implied warranty as defined by the statute, the case is narrowed to the issue on the other, namely, whether "it appears that the buyer (relied) on the seller's skill and judgment" in selecting the coal. The facts on which this question turns were briefly these:

The Coal Company, the seller, was both a producer of coal and a dealer in coal. It had previously sold to the Navigation Company coal it had produced from its own mines; but in the instant transaction it informed the buyer that the coal it would deliver would not be its own but would be such as it could procure elsewhere. And so it happened. The Coal Company found this coal running to the piers, purchased it en route and sold it to the Navigation Company by the contract in suit. The buyer had no opportunity to see the coal before it was purchased, or to inspect it before it was delivered.

Prior to the statute, the rule applicable in such case, as stated in Dushane v. Benedict, 120 U. S. 630, 636, 7 Sup. Ct. 696, 697 (30 L. Ed. 810) was this:

"When a dealer contracts to sell goods which he deals in, to be applied to a particular purpose, and the buyer has no opportunity to inspect them before delivery, there is an implied warranty that they shall be reasonably fit for that purpose."

As expressed in Jones v. Just, L. R. 3 Q. B. 197 (cited with approval in Dushane v. Benedict):

"It must be taken as established that on the sale of goods by a manufacturer or dealer, to be applied to a particular purpose, it is a term in the contract that they shall reasonably answer that purpose, and that on the sale of an article by a manufacturer to a vendee who has not had an opportunity of inspecting it during the manufacture, that it shall be reasonably fit for use or shall be merchantable, as the case may be."

In Rodgers v. Niles, 11 Ohio St. 48, 53 (78 Am. Dec. 290), the Supreme Court of Ohio recognized an implied warranty:

"Where it is evident that the purchaser did not rely on his own judgment of the quality of the article purchased, the circumstances showing that no examination was possible on his part, or the contract being such as to show that the obligation and responsibility of ascertaining and judging of the quality was thrown upon the vendor, as where he agrees to furnish an article for a particular purpose or use."

See also Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 113–116, 3 Sup. Ct. 537, 28 L. Ed. 86; Seitz v. Brewers' Ref. Co., 141 U. S. 510, 516–520, 12 Sup. Ct. 46, 35 L. Ed. 837; Pullman Car Co. v. Metropolitan Railway Co., 157 U. S. 108, 15 Sup. Ct. 503, 39 L. Ed. 632; Gillespie Brothers & Co. v. Cheney, L. R. 2 Q. B. 59, where, citing cases, the general rule and the exceptions are referred to.

This common-law rule was embodied in the different state enactments of the Uniform Sales Act. In construing the provision of the Ohio Sales Act, identical with that of the Pennsylvania Sales Act now under discussion, the Circuit Court of Appeals for the Sixth Circuit, in Kansas City Bolt & Nut Co. v. Rodd, 220 Fed. 750, 754, 755, 136 C. C. A. 356, held that, where the buyer had no opportunity for previous inspection, he "was entitled to rely, and will naturally be presumed to have relied, upon the seller's skill and judgment," following the rule laid down in Kellogg Bridge Co. v. Hamilton, supra. In the latter case, the court—dealing, it is true, with a manufacturing seller, but before the distinction between manufacturer and dealer had been abolished—said:

"According to the principles of decided cases, and upon clear grounds of justice, the fundamental inquiry must always be whether, under the circumstances of the particular case, the buyer had the right to rely and necessarily relied on the judgment of the seller and not upon his own."

Applying these rules to the circumstances of the sale and purchase of coal in this case, where admittedly the seller was the only one who had an opportunity to inspect the coal before its purchase and delivery, it appears from the very nature of the transaction that the buyer did rely, as it had to do, on the seller's skill and judgment to select and deliver coal which was reasonably fit for the purpose for which it was bought. Hence we find that the requirements of the statute raising a warranty by implication were satisfied—if its terms extended to a sale between *dealer* and *buyer*. This the libelant denies.

Prior to the general enactment of the Uniform Sales Act a distinction was made by some courts between a seller who was a producer, that is, a grower or manufacturer, and a seller who was a dealer, bas-

ed on the better knowledge which the former had of the quality of his goods. Notable among these were the courts of Pennsylvania. Sellers v. Stevenson, 163 Pa. 262, 29 Atl. 715; Wise v. Wilby, 30 Pa. Super. Ct. 484. But the Pennsylvania Sales Act used terms which on their face seem to abolish this distinction (as by like terms in the English Sale of Goods Act the distinction was abolished), for they define the seller, on whose skill and judgment the buyer relies, as one "whether he be grower or manufacturer or not." Gillespie Brothers & Co. v. Cheney, L. R. 2 Q. B. 59. Whatever doubt may have been entertained as to the precise meaning of this expression in the Pennsylvania statute, it was set at rest by the construction given it by the Supreme Court of Pennsylvania in Griffin v. Metal Product Co., 264 Pa. 254, 107 Atl. 713. That case concerned the sale of high-speed steel by the seller—whether a manufacturer or dealer is not clear— to a buyer, and centered on the question whether there was an implied warranty that the steel should be reasonably fit for the purpose for which the seller knew it was to be used. The court said:

"Before the passage of the Act, it had been repeatedly so held, so far as relates to the grower or manufacturer of the goods sold, and the only change made thereby was to extend the rule to *every seller*, 'whether he be the grower or manufacturer or not'"

—citing and quoting from Kellogg Bridge Co. v. Hamilton, supra.

We are of opinion therefore that the court's decree dismissing the libel on the finding of an implied warranty and breach thereof was without error and must be

Affirmed.